**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 12, 2022.**

_____
**MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT EARL TURNER, JR., | § | CASE NO. 22-60200-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 13 |

## OPINION

### I. INTRODUCTION.

Before the Court is a motion to dismiss this chapter 13 case ("Motion to Dismiss") filed by UBS Financial Services Inc. ("UBS"). UBS moves to have this case dismissed for cause based on (i) Debtor Robert Earl Turner, Jr.'s ("Debtor") alleged ineligibility under 11 U.S.C. § 109(e),[1] (ii) the Debtor's alleged bad faith in filing this case under § 1307(c), or (iii) the Court's abstention from hearing this case under § 305. Alternatively, UBS asks the Court to convert this case to

---

[1] All statutory citations and references are to title 11 of the United States Code ("Bankruptcy Code") except where otherwise noted.

1

chapter 7. The Court grants the Motion to Dismiss.

## II. JURISDICTION AND VENUE.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This opinion serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

## III. FACTUAL BACKGROUND.

The Debtor was an employee of UBS from March 1996 until October 21, 2021. While working for UBS, the Debtor provided financial- and investment-advisory services as a member of a team headed by his wife, Stephanie L. Turner. UBS alleges that, while the Debtor was employed with UBS, the Debtor misappropriated over $17 million from at least twenty-eight UBS customers by soliciting sham investments in fake annuities purportedly issued by Fairfax Financial Corporation ("Fairfax").[2] After discovering the Debtor's misappropriations, UBS took steps to reimburse the customers harmed by the Debtor's allegedly fraudulent scheme and, according to UBS's proof of claim, settled with twenty such customers for a total of $12,640,970.09.

UBS seeks to initiate an arbitration proceeding with the Financial Industry Regulatory Authority against the Debtor ("FINRA Arbitration").[3] To that end, and to ensure that the Debtor did not abscond with, hide, or transfer any assets before the FINRA Arbitration, UBS filed a petition for a writ of attachment ("Writ of Attachment") against the Debtor and Stephanie Turner

---

[2] UBS alleges that Fairfax is itself a fraudulent scheme perpetrated by the Debtor and his friend Mark Woodward, who held himself out as the Managing Trustee of Fairfax.
[3] UBS asserts that the Debtor signed a written agreement with UBS to arbitrate all disputes between them. As of the petition date, UBS has not yet begun the FINRA Arbitration. This opinion takes no position on the proposed arbitration proceedings.

in the 414th Judicial District Court of McLennan County, Texas, on May 6, 2022. Six days later, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code. A hearing on the Writ of Attachment was scheduled for the next day, though the automatic stay prevented it from going forward. The Debtor testified at the meeting of creditors that he learned of the Writ of Attachment about two days before the scheduled hearing. He then met with his attorney the day before the hearing and, under the advice of his attorney, decided to file for bankruptcy.

The Debtor filed his chapter 13 petition without schedules, statements, or other required documents, though the Debtor subsequently filed these documents. According to the schedules, the Debtor is now retired and subsists on monthly income of $6,380 from a combination of Social Security, rent received for a rental property, and note payments on a Little Rock, Arkansas mortgage. After expenses, the Debtor claims his monthly net income is only $422. Despite this modest income, the Debtor lists real and personal assets totaling $5,885,467.43.

On the other side of the ledger, the Debtor's schedules list total secured debt of $16,600, all of which is held by the McLennan County Tax Office, and $0 of unsecured debt. McLennan County filed a proof of claim for $3,063.33 for estimated 2022 property taxes. The City of Waco, Midway ISD ("City of Waco") filed a proof of claim for $12,296.82 for estimated 2022 property taxes. These proofs of claim represent estimated, future property taxes that have not yet been assessed or come due.

The Debtor's Schedule E/F lists UBS as holder of an unsecured claim in an unknown amount based on UBS's pending lawsuit. The Debtor shows that this claim is contingent, unliquidated, and disputed. UBS filed an amended proof of claim in the amount of $17,324,217.13, which represents $8 million in total principal investments in Fairfax annuities

3

plus the interest that the various UBS customers believed that they were accruing from these annuities. Still, an addendum to the amended proof of claim states that UBS has settled with only twenty of the twenty-eight customers for a total of $12,640,970.09.

The Debtor filed a proposed chapter 13 plan concurrently with the schedules. The plan proposes to pay $500 a month for thirty-six months for a base amount of $18,000. The plan lists only one creditor, the McLennan County Tax Office, with a secured claim of $16,600 to be paid at an interest rate of 12%. The plan also contains the following "nonstandard provision": "An adversary will be filed to determine the amount of [l]iability if any owed to UBS Financial, creditor in this case. Once the amount of debt is determined by the Court, the Debtor will provide for payment of the debt, if any, to be paid to this creditor."[4] The chapter 13 trustee and UBS have objected to the Debtor's plan, and the plan has not been confirmed.

UBS filed the Motion to Dismiss one day before the Debtor filed his schedules and plan. The Court held a hearing on the Motion to Dismiss on June 22, 2022. The Debtor filed a response on the morning of the hearing. At the end of the hearing on June 22, the Court continued the hearing until August 2, 2022, at which point the parties presented more evidence and testimony. The Court then took this matter under advisement.

## IV. DISCUSSION

UBS seeks dismissal of this case for cause, with prejudice, on the grounds of (i) the Debtor's ineligibility under § 109(e), (ii) the Debtor's bad faith under § 1307(c), or (iii) the Court's abstention from this case under § 305. Alternatively, UBS argues that the Court should convert this case from chapter 13 to chapter 7. The Court believes that cause exists to dismiss this case

---

[4] The Debtor has not yet filed such an adversary proceeding.

4

under § 1307(c), and thus the Court need not reach the issues of the Debtor's eligibility,[5] abstention, or conversion.[6]

Section 1307(c) provides that, on request of a party in interest and after notice and a hearing, the Court "may dismiss a case under this chapter . . . for cause, including" eleven enumerated conditions. § 1307(c). The Bankruptcy Code specifies that the term "including" is not limiting, so courts need not constrain themselves to § 1307(c)'s enumerated conditions when deciding whether cause exists to dismiss a chapter 13 case. *See* § 102(3) (clarifying that the terms "includes" and "including" are not limiting).

UBS acknowledges that none of § 1307(c)'s enumerated conditions apply here. Still, UBS argues that the Debtor launched this case in bad faith and that this bad faith suffices as cause to dismiss the case under § 1307(c). UBS lays out several grounds for finding that the Debtor filed this case in bad faith. First, UBS argues that the timing of the Debtor's filing, six days after UBS filed the Writ of Attachment and one day before a scheduled hearing on the Writ of Attachment, shows that the bankruptcy case is just a tactic to avoid entry of the Writ of Attachment. Second, UBS argues that the bankruptcy case is merely a two-party dispute between the Debtor and UBS and that the bankruptcy case serves no purpose other than to circumvent this two-party dispute in state court or a possible FINRA Arbitration. To this point, UBS asserts that its claim falls within

---

[5] A debtor is eligible to file under chapter 13 only if they owe, on the petition date, "noncontingent, liquidated debts of less than $2,750,000." § 109(e). UBS's proof of claim totals $17,324,217.13, about $8 million of which represents principal investments in the Fairfax annuities. UBS has bought $12,640,970.09 in claims from the original investors. The Court notes that each of these three amounts exceeds the § 109(e) debt limit of $2,750,000. The Debtor disputes UBS's claim and asserts it is contingent and unliquidated. UBS denies its claim is contingent or unliquidated. Because the Court finds other grounds to dismiss the case, it makes no finding on whether the debt is noncontingent or liquidated and does not at this time address the question of the Debtor's eligibility under § 109(e).

[6] The Court notes that, in a two-party dispute such as this, conversion makes little sense. A chapter 7 trustee would essentially serve only one creditor, and a chapter 11 case would only serve as an alternative forum for the two-party dispute. For these reasons, the Court did not grant the Debtor's oral request for time to convert to a different chapter.

several of the fraud-based exceptions to discharge set forth in § 523(a) and that, even if this bankruptcy case is allowed to proceed, the debt owed to UBS will not be dischargeable. UBS points out that the Debtor lists very few other creditors—eight in total, including UBS—and that the debt owed to the other creditors is minuscule in comparison with UBS's claim of more than $17 million.

What constitutes "cause" to dismiss a bankruptcy case "is a broad concept, designed to 'afford flexibility to the bankruptcy courts.'" **Kelley v. Cypress Fin. Trading Co. (In re Cypress Fin. Trading Co.)**, 620 F. App'x 287, 289 (5th Cir. 2015) (quoting **Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)**, 779 F.2d 1068, 1072 (5th Cir. 1986)). Although none of the enumerated conditions for dismissal in § 1307(c) mention bad faith, bad faith suffices as "cause" to dismiss a chapter 13 case. *See* **Marrama v. Citizens Bank of Mass.**, 549 U.S. 365, 373 (2007) (noting that despite no specific mention of bad faith in § 1307(c), bankruptcy courts "nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause'" (collecting cases)). Bad faith is determined on a case-by-case basis and "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial conditions, motives, and the local financial realities." **In re Shead**, No. Civil Action H–08–1386, No. Bankruptcy H–07–34357, 2008 WL 1995373, at *2 (S.D. Tex. May 6, 2008) (internal quotation marks omitted) (quoting *Little Creek Dev. Co.*, 779 F.2d at 1072). In determining whether a bankruptcy petition has been filed in bad faith, the court should consider the totality of the circumstances "to determine whether or not there has been an abuse of a provision, purpose, or spirit of Chapter 13." **In re Russell**, 348 B.R. 441, 448 (Bankr. S.D. Tex. 2006) (citing **In re Chaffin**, 836 F.2d 215 (5th Cir. 1988)).

Courts routinely find chapter 13 petitions to be in bad faith where the bankruptcy case essentially involves the resolution of a two-party dispute. *See, e.g.*, *Shead*, 2008 WL 1995373, at *3 ("Bankruptcy law is not implicated in a two-party dispute . . . ."); ***In re Fonke***, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004) ("Courts have found a chapter 13 to be in bad faith where the Debtor's reorganization essentially involves the resolution of a two-party dispute." (first citing ***In re Plagakis***, No. 03 CV 0728(SJ), 2004 WL 203090 (E.D.N.Y. 2004); then citing ***In re Virden***, 279 B.R. 401 (Bankr. D. Mass. 2002); and then citing ***In re Petersen***, 228 B.R. 19 (Bankr. M.D. Fla. 1998))); *see also* ***In re Starmark Clinics, LP***, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) (noting that the court "had generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute"); ***In re Anderson Oaks (Phase I) Ltd. P'ship***, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987) ("Two-party disputes such as this simply have no place in bankruptcy." (first citing ***In re Landmark Cap. Co.***, 27 B.R. 273, 281 (Bankr. D. Ariz. 1983); then citing ***In re Gilbert Broad. Corp.***, 54 B.R. 2, 4 (Bankr. D.N.J. 1984); then citing ***In re Volpe***, 53 B.R. 46, 48 (Bankr. M.D. Fla. 1985); and then citing T. Jackson, *The Logic and Limits of Bankruptcy Law* (Harvard University Press 1986))).

This case bears the hallmarks of a two-party dispute. The Debtor's proposed plan deals with only one creditor other than UBS—the McLennan County Tax Office. Even so, UBS's asserted claim far outweighs the $16,600 debt owed to the McLennan County Tax Office. Further, McLennan County's proof of claim, in the amount of only $3,063.33, shows that the debt owed to the county is for estimated future property taxes that have not yet come due. The City of Waco has also filed a similar proof of claim for estimated future property taxes. Under Texas law, a lien

arises on January 1 of the current year for ad valorem property-tax obligations for such year. TEX. TAX CODE § 32.01(a). Such obligations are not assessed until October 1 of such year, and those tax obligations are not due until February 1 of the following year. *Id.* §§ 31.01(a), 31.02(a). Thus, the McClennan County and City of Waco claims are postpetition claims that the Debtor does not have to pay until February 1, 2023, and that the Debtor appears to have been previously paying in the ordinary course. They are not prepetition claims needing reorganization.

The Debtor's schedules list no other creditors with claims of any value. Further, the filing of this petition appears intended to frustrate UBS's attempt to litigate its alleged claim against the Debtor. The Debtor testified at the meeting of creditors that he learned of the Writ of Attachment about two days before the hearing on the Writ of Attachment, met with his attorneys the day before the hearing, and decided to file for bankruptcy on the eve of the hearing. The morning of the hearing on the Motion to Dismiss, the Debtor filed a responsive pleading that included a single magazine-article exhibit, which could be summarized as an attack on the FINRA arbitration process. This article, the Debtor's testimony at the meeting of creditors, and the Debtor's own statement in his proposed plan that the Debtor will file an adversary proceeding to determine the amount of UBS's claim betray the Debtor's true intention to avoid litigating the dispute in state court or in arbitration and instead to litigate the dispute with UBS in bankruptcy court. But bankruptcy court simply is not the proper venue for this litigation.

The Court questions whether this case serves any reorganizational purpose. As noted above, the Debtor's plan only proposes payments of future obligations to the McLennan County Tax Office, but the plan and the Debtor's schedules reveal that McLennan County is considerably oversecured and appears to have been previously paid in the ordinary course. The Debtor's

schedules reveal that the Debtor has substantial assets—and much equity in those assets. The claim of the City of Waco in the amount of $12,296.82 is also considerably oversecured and appears to have been previously paid in the ordinary course. The Debtor's bankruptcy thus does not appear to benefit any of his creditors. And because the value of the Debtor's assets far outweighs the debts owed for the future tax claims, the case also does not appear to benefit the Debtor other than to forestall the state-court proceeding on the Writ of Attachment. "When a bankruptcy serves no purpose, results in no benefit for its creditors or the debtor, and only delays litigation already pending against the debtor, there is 'cause' to dismiss the case." *Cypress Fin. Trading Co.*, 620 F. App'x at 289.

For these reasons, the Court finds that there is "cause" to dismiss the case under § 1307(c).

## V. CONCLUSION

This bankruptcy case is a paradigmatic two-party dispute between the Debtor and UBS. The Debtor filed this case on the eve of a hearing on a Writ of Attachment filed by UBS in state court in McLennan County. Despite the Debtor's efforts to bring the dispute within the jurisdiction of this Court, the bankruptcy court is not where this sort of litigation belongs. Further, because the Debtor's other creditors are either greatly oversecured, postpetition ad valorem tax claims that would be paid in the ordinary course or are owed insignificant amounts in comparison to UBS's alleged claim, the Court does not believe that this bankruptcy case serves a legitimate reorganizational purpose. For these reasons, the Court will grant UBS's Motion to Dismiss and will dismiss this case under § 1307(c). The Court will enter a separate order consistent with this opinion.

# # #